## Pennsylvania Company, etc., Trustee, v. Pannonia Building Association

*Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.
*Wessel, Bennett & Weiss,* for defendant.

WALSH, J., February 5, 1937.—The instant case presents a novel and interesting problem. Briefly stated, the question involved is whether one who is the successful bidder at a sheriff's sale of realty immediately becomes the

real owner of the realty so that he will be personally liable for taxes assessed upon the realty after the date of the sheriff's sale, but prior to the date of actual acknowledgment of the sheriff's deed.

There is no dispute as to the relevant facts, which are as follows: Plaintiff was the holder of a first mortgage secured upon premises 824 Somerset Street, Philadelphia. Defendant was the holder of the second mortgage secured upon said premises. Defendant instituted foreclosure proceedings upon its mortgage, and the property was exposed for sale by the sheriff on November 2, 1931. Defendant was the successful bidder at this sale. On January 25, 1932, the sheriff acknowledged his deed conveying said premises to defendant. Thereafter, in November 1932, plaintiff foreclosed upon its mortgage, purchased the property and was compelled to pay city and school taxes assessed against it for the year 1932.

In this action, plaintiff seeks to recover from defendant the amount of those taxes, on the theory that when they were assessed, January 1, 1932, defendant was the real or actual owner of the premises, although the deed of conveyance from the sheriff to defendant was not acknowledged until January 25, 1932.

Whether or not defendant can be held to have been the real or actual owner of the premises on January 1, 1932, so as to create personal liability for taxes assessed against the realty on that date, depends upon the rights incident to a successful bid at a sheriff's sale of realty. Certainly, it would be an empty title were it to be held that the successful bidder becomes thereby the real owner even though he is denied the benefits of ownership. And to add to the vacuum content of his title the burdens of personal liability for taxes would be an inequity to which the law should not lend itself. Therefore, it is first necessary to ascertain the rights acquired by the successful bidder, so that the title of real owner may not be bestowed unless there be sufficient substantive rights to support it and to balance the scales against tax liability.

It has long been established that a purchaser of real estate at a sheriff's sale acquires an inceptive or inchoate estate: Stoever v. Rice, 3 Whart. 21; Garrett v. Dewart, 43 Pa. 342; Collins, to use, v. London Assurance Corp., 165 Pa. 298. This inceptive title bestows certain benefits upon the purchaser, and likewise entails certain liabilities. These matters are summarized in St. Charles B. & L. Assn. v. Hamilton et al., 319 Pa. 220, 223:

"It is by no means true that a purchaser at a sheriff's sale gets none of the incidents of ownership until the deed is acknowledged. . . . In Slater's App., 28 Pa. 169, it was held that the purchaser at the sheriff's sale prior to such acknowledgment gets an inceptive interest which may be bound by a judgment against him during this period (Morrison v. Wurtz, 7 Watts 437); Stover v. Rice, 3 Wharton 21, decided that a purchaser at sheriff's sale acquires an equitable estate before the acknowledgment of the sheriff's deed; Bellas v. McCarty, 10 Watts 13, states that a purchaser acquires an interest which descends to his heirs; Hoyt v. Koons, 19 Pa. 277, that a junior lienor cannot acquire title by foreclosure three weeks after a prior lienor had had the property knocked down to him, but before his deed has been acknowledged: Elliott v. Peersall, 4 Clark 157, that one who became the wife of the debtor subsequent to the sale but prior to the acknowledgment of the deed, acquired no right of dower; Young's App., 2 P. & W. 380, that a debtor has no right to redeem his property by making a tender of the amount of the debt plus costs after the property has been knocked down by the sheriff, but before the deed has been acknowledged; Stroup v. Raymond, 183 Pa. 279, that a bona fide purchaser at sheriff's sale acquires a vested right to the property sold immediately; Penna. S. V. R. Co. v. Cleary, 125 Pa. 442, that a purchaser at sheriff's sale acquires an inchoate title in the land by virtue of his bid and its acceptance by the sheriff."

It is obvious, therefore, that certain incidents of ownership attach as a result of a successful bid at sheriff's

sale. But it is most significant that these incidents attach because the purchaser acquires an "inceptive title", an "inchoate title". Nowhere is he referred to as the real owner. In the case of St. Charles B. & L. Assn. v̇. Hamilton et al., supra, the court states, at page 224:

"In all of these cases, and in many others which could be cited, the distinction is always made between the date of sale and the date of acknowledgment of the deed. The two incidents are never treated as one."

Certainly this language urges strongly against plaintiff's contention. Why such a distinction if real ownership is transferred at the sheriff's sale?

Certain of the incidents of ownership, listed above, do attach at the sheriff's sale. Many other and substantial rights do not. The debtor-owner, not the successful bidder, is entitled to possession of the premises until the deed is acknowledged and delivered: Garrett v. Dewart, supra; the debtor-owner is entitled to the moneys paid by an insurance company because of a fire on the premises between the dates of the sheriff's sale and of the acknowledgment of the deed: Collins, to use, v. London Assurance Corp., supra; the purchaser does not become entitled to the rents, as owner and in his own right, until the acknowledgment of the deed: Provident Trust Co. v. Judicial B. & L. Assn. et al., 112 Pa. Superior Ct. 352. In the latter case, the sheriff's sale occurred on March 2, 1931, and the sheriff's deed was acknowledged and delivered on March 9, 1931. The court, through Keller, J., states at page 356: "As the defendant [debtor] was the real and registered owner of the land from May 13, 1929 to March 9, 1931. . . ."

Thus we find the purchaser denied many of the important rights of real ownership until the acknowledgment and delivery of the sheriff's deed. In fact, we find that he is denied the income-producing rights of real ownership. To tax him with the money liabilities of real ownership under the circumstances would hardly be equitable.

There is another, and controlling argument which is binding against plaintiff: The law is well settled that as between the debtor-owner and the purchaser at sheriff's sale, the former is the owner until the acknowledgment and delivery of the sheriff's deed: Collins, to use, v. London Assurance Corp., supra. Surely, it cannot be maintained that both the debtor-owner and purchaser are the real owners during the period in question, so as to make both of them personally liable for taxes assessed at that time. Yet if plaintiff's contention is to be upheld such would be the result. The debtor-owner, being the registered owner, and being the real owner as against the purchaser, is certainly personally liable. To attach such liability to the purchaser as well is to create an anomalous condition: two parties having conflicting interests become real owners of the entirety of one estate. This is an untenable contention.

Plaintiff relies upon analogy for his argument. Analogy is helpful, but it must be treated with great care. Plaintiff has made the most of his analogies, yet certain basic differences between the situations cited and that in the instant case place them in entirely different categories. Plaintiff cites the case of Pennsylvania Co., etc., Trustee, v. Bergson, 307 Pa. 44, as demonstrating that there may be dual personal liability for taxes. That is not disputed. But in that case the dual liability considered was that of a registered straw party and the real and beneficial owner. It was not a case wherein the interests of the registered owner and alleged real owner were in conflict. Nor was it a case wherein both the registered owner and the other party were held to be, each of them, the real and beneficial owners. Rather was it a case where both were one, and where the entire estate was owned between them, bare legal title in the one and entire beneficial title in the other. It certainly was not a case of bestowing more than one complete title on the two, as would be the case herein if plaintiff succeeded in his claim, thereby upholding a real ownership in the purchaser in addi-

tion to the one already possessed, under the well-established law, by the debtor-owner.

Plaintiff also draws an analogy to cases involving contracts for the sale of land, wherein the purchaser becomes personally liable for taxes assessed after the execution of the contract but prior to delivery of the deed. This analogy is likewise not applicable. For in cases involving contracts for the sale of land the purchaser becomes, in equity, the owner of the land. This is based upon the theory of equitable conversion, which in turn is based upon the maxim that *"equity regards that as done, which ought to be done"*: Mitchell on Real Estate and Conveyancing in Pa. 27. Thus, since equity considers the above the intention of the parties, in the absence of any expression of intent to the contrary, it executes that intent immediately. But that is not the instant case. Here there is no contract between the registered owner and the purchaser; here the purchaser is taking against the registered owner, not through his voluntary act; here there is no mutual intent to which equity can give immediate effect, unless, of course, we substitute the sheriff for the debtor-owner, which would, itself, destroy the analogy. Furthermore, the rights acquired by a vendee under a contract differ in many respects from those acquired by a successful bidder at a sheriff's sale. The doctrine of equitable conversion cannot be applied herein, and without it real ownership cannot be placed in the purchaser until delivery of the deed.

It may be remarked in passing that the doctrine of equitable conversion was originally founded upon a fiction. Of course, it is now deeply ingrained in the law and is not to be upset by judicial edict; however, it should not be extended beyond its well-defined bounds. It should not be applied to new, and especially not to vastly different situations. To apply the doctrine herein would be doing both.

Counsel for plaintiff has submitted three requests for findings, all of which are refused and exceptions allowed.

Counsel for defendant has submitted four requests for findings of facts and two for conclusions of law. Requests for findings of fact numbered 1, 2, and 3 are granted. Request number 4 is refused and exception allowed. The requests for conclusions of law are granted.

The court finds for defendant.